CASE NO. 25-928

---

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

---

BRENDA ANDREW

Plaintiff,

v.

SCOTT TINSLEY, STEVEN HARPE, and OKLAHOMA DEPARTMENT OF
CORRECTIONS,


Defendants.

---

DEFENDANTS OKLAHOMA DEPARTMENT OF CORRECTIONS ("ODOC"),
ODOC DIRECTOR STEVEN HARPE ("DIRECTOR HARPE"), AND ODOC
WARDEN SCOTT TINSLEY ("WARDEN TINSLEY")
MOTION TO DISMISS AND BRIEF IN SUPPORT

---

LEXIE P. NORWOOD, OBA#31414
Assistant Attorney General
OKLAHOMA ATTORNEY GENERAL'S OFFICE
313 NE 21st Street
Oklahoma City, Oklahoma 73105
Telephone: (405) 521-3921 | Facsimile: (405) 521-4518
*Attorney for Defendants*

September 15, 2025

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................................ii

MOTION TO DISMISS AND BRIEF IN SUPPORT ......................................... 1

STATEMENT OF THE CASE ............................................................................ 1

STANDARD OF REVIEW................................................................................. 3

ARGUMENT AND AUTHORITY .................................................................... 5

   PROPOSITION I: ANDREW FAILED TO EXHAUST ADMINISTRATIVE
   REMEDIES................................................................................................... 5

   PROPOSITION II: DEFENDANTS ARE ENTITLED TO ELEVENTH
   AMENDMENT IMMUNITY....................................................................... 9

   PROPOSITION III: DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.
   ................................................................................................................. 10

   PROPOSITION IV: ANDREW HAS FAILED TO STATE A CLAIM FOR ANY
   EIGHTH AMENDENT VIOLATION ......................................................... 13

   PROPOSITION V: ANDREW HAS FAILED TO STATE A CLAIM FOR ANY
   FIRST AMENDMENT VIOLATION.......................................................... 17

   PROPOSITION VI: ANDREW HAS FAILED TO STATE A CLAIM FOR FIRST
   AMENDMENT RETALIATION ................................................................ 19

   PROPOSITION VII: ANDREW HAS FAILED TO STATE A CLAIM UNDER
   RLUIPA. .................................................................................................. 20

   PROPOSITION VIII: ANDREW IS NOT ENTITLED TO INJUNCTIVE RELIEF... 24

   CONCLUSION ........................................................................................ 26

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Abdulhaseeb v. Calbone*,
  600 F.3d 1301 (10th Cir. 2010) .......................................................................21

*Alamiin v. Morton*,
  528 F. App'x 838 (10th Cir. 2013) ..................................................................20

*Allen v. Clements*,
  930 F. Supp. 2d 1252 (D. Colo. 2013) ............................................................14

*Anderson v. Creighton*,
  483 U.S. 635 (1987) ........................................................................................10

*Argue v. Hofmeyer*,
  80 F. App'x 427 (6th Cir. 2003) ......................................................................12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..........................................................................................4

*Barney v. Pulsipher*,
  143 F.3d 1299 (10th Cir. 1998) .......................................................................14

*Basso v. Utah Power & Light Co.*,
  495 F.2d 906 (10th Cir. 1974) ...........................................................................4

*Becker v. Kroll*,
  494 F.3d 904 (10th Cir. 2007) .........................................................................20

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ...........................................................................................4

*Benefield v. McDowall*,
  241 F.3d 1267 (10th Cir.2001) ........................................................................14

*Booth v. Churner*,
  532 U.S. 731 (2001) ...........................................................................................5

*Brandon v. Holt*,
  469 U.S. 464 (1985) .........................................................................................10

*Brewer v. Mullin*,
  130 F. App'x 264 (10th Cir. 2005) ....................................................................5

*Chesser v. Dir. Fed. Bureau of Prisons*,
  No. 15-CV-01939-NYW, 2018 WL 3729511 (D. Colo. Aug. 6, 2018) ......................22

*Conley v. Gibson*,
  355 U.S. 41 (1957) ...........................................................................................................4

*Crane v. Utah Dep't of Corr.*, 15 F.4th 1296 (10th Cir. 2021) ..........................................12

*Cutter v. Wilkinson*,
  544 U.S. 709 (2005) ...............................................................................................21, 23

*Dubbs v. Head Start, Inc.*,
  336 F.3d 1194 (10th Cir. 2003) ......................................................................................3

*Eagle Air Med Corp. v. Martin*,
  No. CIV.A. 08-CV-00532LT, 2009 WL 651800 (D. Colo. Mar. 12, 2009)..................4

*Eastwood v. Dep't of Corrections of the State of*,
  846 F.2d 627 (10th Cir. 1988) ......................................................................................10

*Edelman v. Jordan*,
  415 U.S. 651 (1974) .......................................................................................................10

*Estelle v. Gamble*,
  429 U.S. 97 (1976) .........................................................................................................16

*Farmer v. Brennan*,
  511 U.S. 825 (1994) ................................................................................................13, 14

*Frazier v. Dubois*,
  922 F.2d 560 (10th Cir. 1990) ......................................................................................20

*Gee v. Pacheco*,
  627 F.3d 1178 (10th Cir. 2010) ......................................................................................4

*Green v. Mansour*,
  474 U.S. 64 (1985) .........................................................................................................25

*Grissom v. Roberts*
  902 F.3d 1162 (10th Cir. 2018) ....................................................................................12

*Groundhog v. Keller*,
  442 F.2d 674 (10th Cir. 1971) ........................................................................................3

*Hannula v. City of Lakewood*,
  907 F.2d 129 (10th Cir. 1990) ......................................................................................10

*Hill v. Pugh*,
    75 F. App'x 715 (10th Cir. 2003) ................................................................. 12

*Holt v. Hobbs*,
    574 U.S. 352 (2015) ................................................................................. 21

*Hudson v. McMillian*,
    503 U.S. 1 (1992) ................................................................................... 14

*Hunter v. Bryant*,
    502 U.S. 224 (1991) ................................................................................. 10

*Jackson v. Meachum*,
    699 F.2d 578 (1st Cir.1983) ...................................................................... 17

*Jernigan v. Stuchell*,
    304 F.3d 1030 (10th Cir. 2002) .................................................................... 5

*Jones v. N. Carolina Prisoners' Lab. Union, Inc.*,
    433 U.S. 119 (1977) ................................................................................. 18

*LaVergne v. Stutes*,
    82 F.4th 433 (5th Cir. 2023) ...................................................................... 12

*Little v. Jones*,
    607 F.3d 1245 (10th Cir. 2010) .................................................................... 5

*Malley v. Briggs*,
    475 U.S. 335 (1986) ................................................................................. 11

*Mann v. Reynolds*,
    46 F.3d 1055 (10th Cir. 1995) ..................................................................... 21

*Matiyn v. Henderson*,
    841 F.2d 31 (2d Cir. 1988) ........................................................................ 22

*Medina v. City & Cnty. of Denver*,
    960 F.2d 1493 (10th Cir. 1992) .................................................................... 11

*Mitchell v. Forsyth*,
    472 U.S. 511 (1985) ................................................................................. 11

*Morris v. Noe*,
    672 F.3d 1185 (10th Cir. 2012) .................................................................... 11

*Mullenix v. Luna,*
   577 U.S. 7 (2015) .................................................................................... 12

*O'Lone v. Est. of Shabazz,*
   482 U.S. 342 (1987) ........................................................................... 17, 22

*Pearson v. Callahan,*
   555 U.S. 223 (2009) ............................................................................... 11

*Pell v. Procunier,*
   , 417 U.S. 817, 822 (1974) .................................................................... 18

*Pennhurst State Sch. & Hosp. v. Halderman,*
   465 U.S. 89 (1984) ................................................................................... 9

*Porter v. Clarke,*
   923 F.3d 348 (4th Cir. 2019) ................................................................. 12

*Porter v. Pennsylvania Dep't of Corr.,*
   974 F.3d 431 (3d Cir. 2020) ............................................................. 12, 14

*Robbins v. Oklahoma,*
   519 F.3d 1242 (10th Cir. 2008) ............................................................ 4, 5

*Roska ex rel. Roska v. Peterson,*
   328 F.3d 1230 (10th Cir. 2003) ............................................................. 11

*Ruiz v. McDonnell,*
   299 F.3d 1173 (10th Cir. 2002) ............................................................... 3

*Salahuddin v. Goord,*
   467 F.3d 263 (2d Cir.2006) .................................................................... 18

*Silverstien v. Federal Bureau of Prisons*
   559 F. App'x 739 (10th Cir. 2014) ........................................................ 15

*Sutton v. Utah State School for the Deaf & Blind,*
   173 F.3d 1226 (10th Cir. 1999) ............................................................... 3

*Tal v. Hogan,*
   453 F.3d 1244 (10th Cir. 2006) ............................................................ 2, 6

*Trujillo v. United States,*
   313 F. Supp. 2d 1146 (D.N.M. 2003) ...................................................... 4

*Turner v. Safley*
    482 U.S. 78 (1987) ....................................................................... 18, 21

*Twyman v. Crisp*,
    584 F.2d 352 (10th Cir. 1978) ........................................................ 16

*Will v. Michigan Dept. of State Police*,
    491 U.S. 58 (1989) .......................................................................... 10

*Wilson v. Seiter*,
    501 U.S. 294 (1991) ........................................................................ 16

*Woodford v. Ngo*,
    548 U.S. 81 (2006) ............................................................................ 5

*Yoder v. Honeywell, Inc.*,
    104 F.3d 1215 (10th Cir. 1997) ........................................................ 3

## STATUTES

42 U.S.C. § 1983 ....................................................................... Passim

42 U.S.C. § 1997e(a) ......................................................................... 5

42 U.S.C. § 2000cc-1 ........................................................................ 3

42 U.S.C. § 2000cc-1(a) ................................................................... 20

## RULES

Fed. R. Civ. P. 8(a)(2) ....................................................................... 4

Fed. R. Civ. P. 12(b)(1) ..................................................................... 3

Fed. R. Civ. P. 12(b)(1), (6), and (8) ................................................ 1

Fed. R. Civ. P. 12(b)(6) ..................................................................... 3

## REGULATIONS

28 C.F.R. § 548.10(a) ...................................................................... 22

28 C.F.R. § 548.10(b) .......................................................................................................22

### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF OKLAHOMA

BRENDA ANDREW,

       Plaintiff,

v.

SCOTT TINSLEY, STEVEN HARPE,
and OKLAHOMA DEPARTMENT OF
CORRECTIONS,

       Defendants.

Case No.: 25-cv-928-D

## <u>MOTION TO DISMISS AND BRIEF IN SUPPORT</u>

Defendants, Oklahoma Department of Corrections ("ODOC"), ODOC Director Steven Harpe ("Director Harpe"), and ODOC Warden Scott Tinsley ("Warden Tinsley"), or collectively "Defendants," respectfully move this Court to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1), (6), and (8). In support of this Motion, Defendants state the following:

### STATEMENT OF THE CASE

Plaintiff Brenda Andrew ("Andrew") is an inmate in the custody of ODOC and is currently housed at Mabel Bassett Correctional Center ("MBCC"). Andrew was sentenced to death following a jury trial for the first-degree murder of her husband in violation of 21 O.S. § 701.7, and conspiracy to commit a felony, to wit, murder in the first-degree, in

violation of 21 O.S. § 421[1]. Following her conviction, Andrew was housed at MBCC and confined in the Special Management Unit ("SMU"). [Doc. 1, p. 7]. Andrew correctly states that ODOC has no maximum-security facility for women, and any woman sentenced to death is placed in MBCC, which has medium security. *Id.* at p. 8. Andrew remained in SMU for approximately sixteen years until she was moved to general population in December 2019. *Id.* at p. 7. Andrew was then moved back to SMU in January of 2024 following complaints from other inmates about her appeals, concern for Andrew's own safety, allegations related to a planned suicide attempt with prescription medication, and a report of an escape attempt. *Id*. at p. 7-9. Additionally, as Andrew was in the process of moving to SMU, officials found a seam ripper which was classified as a "Class A" infraction. *Id*. at p. 8.

Plaintiff now brings this lawsuit alleging the following claims under 42 U.S.C. § 1983 against Defendants Director Harpe and Warden Tinsley in their official capacities: (1) cruel and unusual punishment under the Eighth and Fourteenth Amendments; (2) retaliation under the First and Fourteenth Amendments; and (3) violation of her free exercise of religion under the First and Fourteenth Amendments. Plaintiff also brings claims of violations of the Religious Land Use and Institutionalized Persons Act (RLUIPA)

---

[1] *See Offender Lookup information* for Brenda Andrew, ODOC #483397, available at https://okoffender.doc.ok.gov. Courts may take judicial notice of facts which are a matter of public record. *Tal v. Hogan*, 453 F.3d 1244, 1264 n. 24 (10th Cir. 2006). The inmate information and the policies of ODOC are public records, available through the ODOC website. *See also State v. Andrew*, Oklahoma County District Court, No. CF-2001-6189.

under 42 U.S.C. § 2000cc-1 against all Defendants. Plaintiff seeks both declaratory and injunction relief. [Doc. 1, p. 34].

For the reasons listed below, this case should be dismissed.

## STANDARD OF REVIEW

A complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted when "it appears that the plaintiff can prove no set of facts in support that would entitle him to relief, accepting the well-pleaded allegations of the complaint as true and construing them in the light most favorable to the plaintiff." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quoting *Yoder v. Honeywell, Inc.*, 104 F.3d 1215, 1224 (10th Cir. 1997)). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs,* 336 F.3d at 1201 (quoting *Sutton v. Utah State School for the Deaf & Blind*, 173 F.3d 1226 (10th Cir. 1999)).

Fed. R. Civ. P. 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." "[A]n assertion of Eleventh Amendment immunity concerns the subject matter jurisdiction of the district court." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180-81 (10th Cir. 2002) (finding that because the State had not waived its Eleventh Amendment immunity, the federal "district court lacked subject matter jurisdiction over . . . [the plaintiff's] § 1983 claim with respect to . . . [the state official], named in her 'official capacity.'"). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of

jurisdiction." *Groundhog v. Keller*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso v. Utah Power & Light Co.,* 495 F.2d 906, 909 (10th Cir. 1974); *Eagle Air Med Corp. v. Martin*, No. CIV.A. 08-CV-00532LT, 2009 WL 651800 (D. Colo. Mar. 12, 2009) aff'd, 377 F. App'x 823 (10th Cir. 2010). Under 12(b)(1), a court may consider matters outside the pleadings without converting the motion into one for summary judgment. *Trujillo v. United States*, 313 F. Supp. 2d 1146, 1148 (D.N.M. 2003).

Fed. R. Civ. P. 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief." The required "short and plain statement" must provide "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *overruled on other grounds by Twombly*, 550 U.S. at 562-63). In order to show an "entitlement to relief" the plaintiff must plead "more than labels and conclusions." *Twombly*, 550 U.S. at 555. The initial pleading must contain "[f]actual allegations [which are sufficient] to raise a right to relief above the speculative level." *Id*. In other words, the complaint must allege "enough facts to state a claim to relief that is plausible on its face[ ]" rather than just conceivable. *Id*. at 570; *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556); *see also Gee v. Pacheco*, 627 F.3d 1178, 1184 (10th Cir. 2010). Plaintiff must do more

than make allegations of such a broad scope that they "encompass a wide swath of conduct, much of it innocent." *Robbins*, 519 F.3d at 1247. Rather, a plaintiff must allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible." *Id*. (quoting *Twombly*, 550 U.S. at 565, n. 10). Plausibility does not mean "likely to be true;" it means that the allegations must be enough that if assumed to be true the plaintiff plausibly, not merely speculatively, has a claim for relief. *Id*.

## ARGUMENT AND AUTHORITY

## PROPOSITION I: ANDREW FAILED TO EXHAUST ADMINISTRATIVE REMEDIES.

Andrew failed to exhaust her administrative remedies regarding the majority of her claims. Pursuant to the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Thus, a prisoner cannot sue concerning prison conditions without first exhausting all available administrative remedies. *Booth v. Churner*, 532 U.S. 731, 733-34 (2001); 42 U.S.C. § 1997e(a).

To properly exhaust, the prisoner must comply "with an agency's deadlines and other critical procedural rules…" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). "Simply presenting a defective or non-complying grievance…does not constitute exhaustion of remedies." *Brewer v. Mullin*, 130 F. App'x 264, 265 (10th Cir. 2005) (not selected for publication). Prisoners must exhaust remedies, even if doing so seems futile. *Jernigan v.*

*Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). Moreover, a prisoner must timely exhaust each step of a prison system's grievance procedure in full compliance with the procedure's requirements; partial compliance is not sufficient. *Id*. Courts will only excuse failure to exhaust if prison officials impede the prisoner's attempts. *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010).

ODOC Policy OP-090124[2], "Inmate/Offender Grievance Process," governs DOC offender complaints regarding incidences of prison life. Further, it provides the multi-step exhaustion process an offender must satisfy before filing suit. According to OP-090124 (V), an offender must first attempt to informally resolve his complaint by talking with the appropriate staff member. If unsuccessful, then the offender must submit a Request to Staff ("RTS") to the appropriate staff member. *Id.* at part (V)(B). If the offender's complaint remains unresolved, the offender may begin the formal grievance procedure by submitting a Grievance to the Reviewing Authority. *Id.* at part (VI). If the complaint concerns a medical issue, the offender must submit the Grievance to the facility Correctional Health Services Administrator ("CHSA"). *Id.* at part (VI)(B)(1). Grievances that are of an emergency or sensitive nature can be submitted directly to the Reviewing Authority without informal resolution. This is appropriate where the inmate faces a substantial risk of personal injury, sexual harm, or other irreparable harm. *Id.* at part (IX). If a grievance

---

[2]  *See* ODOC Policy OP-090124, available at https://oklahoma.gov/doc/legal-services/policies-and-procedures/programs-09.html.  Courts may take judicial notice of facts which are a matter of public record.  *Tal v. Hogan*, 453 F.3d 1244, 1264 n. 24 (10th Cir. 2006).  The inmate information and the policies of ODOC are public records, available through the ODOC website.

response fails to resolve the issue, the inmate should appeal to the Administrative Review Authority ("ARA"), or if the complaint concerns a medical issue, to the ODOCs Medical Administrative Review Authority. *Id.* at part (VIII).

When a RTS or Grievance is not answered, ODOC's policy provides a remedy. Specifically, if there has been no response to a RTS within 30 days of submission but no later than 60 days, an inmate may file a Grievance regarding the lack of response. *Id.* at part V(B)(1)(b)(8). Likewise, when a Grievance is submitted and there has been no response within 30 days but less than 60 days, an inmate may file a Grievance to the ARA on the issue of a lack of response. *Id.* at part VI(C)(4).

Andrew failed to exhaust her administrative remedies concerning her claims for violation of constitutional rights. Andrew alleges the first RTS was submitted October 6, 2024, on issues of Eighth and First Amendment claims. [Doc. 1 p. 25-26]. Chaplain Shaner responded to the First Amendment claim October 22, 2024, stating that her request was submitted to the Division of Institutes for review. *Id*. at p. 26. On October 24, 2024, Andrew received a response from Warden Tinsley that the request for her transfer to general population "had not yet been approved." *Id*. at p. 25. On November 14, 2024, Andrew and her counsel met with Warden Tinsley and were allegedly advised her transfer from general population back to SMU was due to ODOC's current policy in which Andrew must be kept in segregation due to her death sentence. *Id*.

Following this meeting, Andrew submitted another RTS on November 18, 2024, requesting she be moved back to general population and allowed to access religious services. *Id*. at p. 25-26. Warden Tinsley appropriately responded to the RTS request by

stating the issue had already been addressed. *Id*. Plaintiff then submitted a grievance on December 05, 2024. *Id*. at p. 88. This grievance was answered by Warden Tinsley reminding the Plaintiff the issue of her transfer had been answered and addressed previously with her and her counsel. *Id*. at p. 26. On December 26, 2024, Warden Tinsley notified Andrew that she was approved to attend Mass on December 28, 2024. *Id*. The response allegedly did not address the issue of bible study or visits with a priest. *Id*. Andrew asserts she submitted an appeal of the housing denial and access to religions services on January 06, 2025, and the appeal was denied February 10, 2025. *Id*. at p. 25, 27.

Andrew's Complaint lists dozens of additional allegations against Defendants which required her to exhaust all available administrative remedies prior to filing this suit. As to the medical claims, Andrew alleges she has been denied mental health counseling and treatment [Doc. 1 at p. 5], denied prompt medical care due to ODOC's policies [*Id.* at p. 17]; specific allegations include: a complaint of pepper spray used on other inmates causing her eyes to steam and coughing [*Id*. at 17-18], a complaint of back problems and discomfort [*Id*. at 18], lack of access to medical unit at her leisure for Ibuprofen [*Id*. at p. 19], denial of access to a dentist for tooth pain and a filling [*Id.*], a complaint of high blood pressure [*Id.*], a complaint of weight gain due to lack of exercise and no microwave for her to cook her own meals [*Id.*], a complaint of circadian rhythm interruption [*Id.* at p. 20], bruises on her wrists from handcuffs [*Id.*], marks or scarring on her ankles from shackles [*Id.*], and mental health distress due to her isolation [*Id.* at p. 21].

Andrew has not alleged she filed complaints for any of these issues as a RTS or grievance, or with the appropriate Medical Administrative Review Authority, to seek a

remedy as required by ODOC policy and the PLRA. Further, Andrew alleges she has control of the lighting in her cell but not for the lights in the hallway which shine into her cell and disrupt her sleep [*Id.* at p. 12], some days she is taken into the yard before sunrise and receives no sunlight on those days [*Id.*], the smell in SMU is terrible because other inmates are only able to shower three days a week [*Id.*], she is only able to access cleaning supplies for her cell once a week [*Id.*], other inmates in SMU yell and scream disrupting her sleep [*Id.* at p. 13], she cannot work a job while in SMU [*Id.*], she is unable to go the library and chose her own books [*Id.*], she only has access to her tablet and radio the one hour a day she is in the yard [*Id.* at p. 14], visitation hours with family and friends has been inconsistent and inconvenient [*Id.*], visits from friends and family are no contact [*Id.*], her restraints make it difficult to fully engage with visitors [*Id.* at p. 15], and she is subject to more frequent strip searches in SMU [*Id.* at p. 16]. Again, Andrew has made no mention of any RTS or grievance she has filed that would even partially constitute an exhaustion of her administrative remedies on these complaints. The only RTS and grievance plead by Plaintiff relates to moving her housing location and access to weekly religious services. As Andrew has yet to fully comply, or even partially comply with the administrative process exhaustion requirements for the majority of her complaints, and because Andrew does not allege attempts to do so, those claims must be denied.

**PROPOSITION II: DEFENDANTS ARE ENTITLED TO ELEVENTH AMENDMENT IMMUNITY.**

An action for the violation of one's civil rights may be brought under 42 U.S.C. § 1983 against "[e]very person" who, acting under color of law, deprives someone of a

right, privilege, or immunity guaranteed by the United States Constitution and federal laws. Naming an agency of the State as a defendant names the State itself. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984). An ODOC employee, acting within the scope of his employment, is an arm of the State. *Eastwood v. Dep't of Corrections of the State of Okla.*, 846 F.2d 627, 628 (10th Cir. 1988). Because the state is the real party in interest when an official has been subjected to suit, *Edelman v. Jordan*, 415 U.S. 651, 663 (1974), a judgment in a § 1983 suit against an official "in his official capacity" imposes liability against the entity that he represents. *Brandon v. Holt*, 469 U.S. 464, 472 (1985). While "state officials literally are persons," a suit against an official "is no different from a suit against the state itself." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) (citations omitted). Based on the U.S. Supreme Court's decision in *Will*, Defendants, in their official capacities, are not a "person" for purposes of 42 U.S.C. § 1983. As a result, Plaintiff cannot maintain a § 1983 action against the Defendants in their official capacity. Such claims must be dismissed.

**PROPOSITION III: DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.**

A public official or employee is entitled to qualified immunity unless "clearly established" federal rights of which a reasonable person would have known are shown to have been violated. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). "Clearly established" is predicated on a finding that, in light of pre-existing law, the unlawfulness is apparent. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Qualified immunity is an entitlement not to stand trial or face the burdens of litigation. It is an immunity from suit rather than a

mere defense to liability. *Mitchell v. Forsyth,* 472 U.S. 511, 527 (1985). It is effectively lost if a case is erroneously permitted to proceed to trial. *Hannula v. City of Lakewood,* 907 F.2d 129, 130 (10th Cir. 1990).

Once a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate that (1) the defendant violated one of his constitutional rights, and (2) the right in question was clearly established at the time of the allegedly unlawful activity such that "every reasonable official would have understood that what he [was] doing" violated the law. *Morris v. Noe,* 672 F.3d 1185, 1191 (10th Cir. 2012). The court has discretion to decide which of the two prongs of the qualified immunity analysis to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

"[I]n order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City & Cnty. of Denver,* 960 F.2d 1493, 1498 (10th Cir. 1992). The contours of the invoked right must be sufficiently clear such that objectively reasonable state officers would understand that what they are doing violates that right. *Roska ex rel. Roska v. Peterson,* 328 F.3d 1230, 1247 (10th Cir. 2003). "[T]he touchstone of [this] inquiry is whether the officers [were] on notice [that] their conduct [was] unlawful." *Id.* at 1248 (citations and quotations omitted). Thus, if the plaintiff has alleged a constitutional violation and has met his burden to establish that the law on the subject is clearly established, plaintiff must further show that a reasonable official would have known that his actions would violate clearly established law.

> In considering the "reasonable state actor," we must keep in mind that qualified immunity precludes the imposition of liability for 'all but the *plainly incompetent* or those who knowingly violate the law.' *Malley v. Briggs,* 475 U.S. 335, 341 (1986) (emphasis added). Where "officers of reasonable competence could disagree on th[e] issue, immunity should be recognized." *Id. at 341.*

*Id.* at 1251.

In *Mullenix v. Luna*, 577 U.S. 7 (2015), the Supreme Court reiterated that the question of qualified immunity turns on whether the unconstitutionality of "particular conduct" in a "specific context" is clearly established. *Id.* at 11-12. The Supreme Court also reiterated that clearly established law should not be defined at a high level of generality. *Id.*

Only the Third and Fourth Circuit Courts have found that solitary confinement conditions on death row *may* violate the Eighth Amendment. *Porter v. Clarke*, 923 F.3d 348 (4th Cir. 2019); *Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431 (3d Cir. 2020) (emphasis added). Conversely, the Fifth, Sixth and Tenth Circuits have held confinement to a cell for twenty-three hours a day does not violate the Eighth Amendment when inmate is able to receive visitors and participate in some form of exercise or recreation. *See Hill v. Pugh*, 75 F. App'x 715, 721 (10th Cir. 2003); *LaVergne v. Stutes*, 82 F.4th 433, 437 (5th Cir. 2023); *Argue v. Hofmeyer*, 80 F. App'x 427, 429-430 (6th Cir. 2003). The Tenth Circuit most recently held in *Crane v. Utah Dep't of Corr.*, that even mental patients can be held in solitary confinement without it rising to the level of egregious conduct in violation of the Eighth Amendment. 15 F.4th 1296, 1306-07 (10th Cir. 2021). Similarly, in *Grissom v. Roberts*, a prisoner who was held in solitary confinement for twenty years, could not

12

establish a claim for Eighth Amendment violation because he had regular communications with other inmates, staff and regular outdoor recreation as well as "regular access to reading materials and to medical and mental-health care." 902 F.3d 1162, 1174 (10th Cir. 2018).

Here, Andrew engages daily with prison staff, has access to medical and mental health care, access to outdoor recreation, visitation privileges, telephone privileges, correspondence via a tablet, access to courts, access to religious services upon request, and reading materials. *See* ODOC Policy OP-040203. As set forth above, Andrew cannot meet her burden of demonstrating that Defendants violated her constitutional rights by housing her in the SMU. Further, Andrew cannot demonstrate that any clearly established law would have put Defendants on notice that their conduct was unconstitutional. Andrew has alleged no Tenth Circuit or Supreme Court opinion that would put Defendants on notice of any wrongdoing.

Defendants[3] are therefore entitled to qualified immunity.

**PROPOSITION IV: ANDREW HAS FAILED TO STATE A CLAIM FOR ANY EIGHTH AMENDENT VIOLATION**

Andrew alleges her confinement in the SMU rises to the level of cruel and unusual in violation of the Eighth Amendment. [Doc. 1, p. 27]. A two-prong test has been established by the Supreme Court for determining whether prison officials have violated the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). First, "the deprivation must be objectively, sufficiently serious; a prison official's act or omission

---

[3] Defendants discuss Plaintiff's other allegations in the propositions below in regard to qualified immunity.

must result in the denial of the minimal civilized measure of life's necessities;" and second, that "the prison official must have been deliberately indifferent to inmate health or safety." *Porter v. Pennsylvania Dep't of Corr.,* 974 F.3d 431, 441 (3d Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "[C]orrections officers are responsible under the Eighth Amendment 'to provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety.'" *Barney v. Pulsipher,* 143 F.3d 1299, 1310 (10th Cir. 1998). Second, the subjective component, requires an act or a failure to act with "deliberate indifference to a substantial risk of serious harm to a prisoner." *Farmer*, 511 U.S. at 836. The official must "be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inferences." *Id.* at 837. "[T]he Eighth Amendment may be implicated by the infliction of psychological harm but that '[t]he *actual extent* of any ... psychological injury is pertinent in proving a substantial risk of serious harm.'" *Benefield v. McDowall,* 241 F.3d 1267, 1272 (10th Cir.2001) (emphasis added).

As to the first objective component, Andrew's allegations "do not constitute conditions so objectively severe that they rise to the level of an Eighth Amendment violation." *Allen v. Clements*, 930 F. Supp. 2d 1252, 1263-64 (D. Colo. 2013). Routine discomfort is "part of the penalty that criminal offenders pay for their offenses against society." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citations omitted). In this case, Andrew is afforded visits with her priest (Doc. 1- p. 4), visits from family and friends (*Id.* at p. 14), daily access to the yard for recreation (*Id.* at p. 11-12), access to books and

literature (*Id.* at p. 13), and access to a handheld tablet and radio which she is able to use during her recreation time in the yard (*Id.* at p. 14). Andrew admittedly has a shower stall, a sink, toilet, table, stool, bed, and a dressing area in her cell (*Id.* at p. 9-10) and receives adequate food, even claiming that she has gained weight because she has nothing to do but eat. (*Id.* at p. 19). Although the conditions of Andrew's confinement may not be comfortable, they do not rise to the level of objectively serious enough to constitute an Eighth Amendment violation.

Andrew also alleges she is kept in complete isolation from other inmates (*Id.* at p. 12) and that the isolation has resulted in significant mental health issues. (*Id.* at p. 21). In *Silverstien v. Federal Bureau of Prisons*, the court was asked "whether a lack of social contact and environmental stimuli rises to the level an Eighth Amendment violation." 559 F. App'x 739, 755 (10th Cir. 2014). Silverstien appealed a district court ruling that held his thirty-year confinement in solitary did not violate the Eighth Amendment. *Id.* at 749. Because Silverstien's symptoms were mild, he could not show his mental health problems were so serious "as to deprive him of the minimal civilized measures of life's necessities." *Id.* at 758. The court concluded his daily communication, however limited, with prison staff and other inmates, along with outdoor recreation, was a "degree of social contact and environmental stimuli which did not violate his Eighth Amendment right to be free from cruel and unusual punishment." *Id.* at 756. Further, the court held "we cannot conclude his current mental symptoms of anxiety, depression, memory loss, and cognitive impairment are caused by the conditions of his current segregated confinement rather than the mere fact of his lengthy incarceration itself or some other factor, such as age." *Id.*

Similar to *Silverstien*, Andrew's allegations of mental distress in this case are mild. Andrew complains of loneliness and isolation stunting her intellectual growth. [Doc. 1, p. 21]. Andrew admits however: that she has daily contact with prison officials; that she can communicate with other inmates by her admission that she can hear them yelling consciously to hold conversations with one another in SMU; that she is able to receive social visits from friends and family; that she has access to a handheld radio and tablet that she can utilize for up to an hour each day; and that she has frequent visits from her priest. [*Id.* at p. 12-14, p. 24]. Andrew also states that she has seen and spoken with psychologists and mental health counselors at MBCC. [*Id.* at p. 21].

Andrew's allegations also do not meet the subjective component requiring deliberate indifference to claims of inhumane conditions of confinement. *Wilson v. Seiter*, 501 U.S. 294, 303-304 (1991). The Supreme Court has held in the context of context of a § 1983 action for injunctive relief that only "deliberate indifference to serious medical needs" of prisoners violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976); *see also Twyman v. Crisp*, 584 F.2d 352, 355 (10th Cir. 1978). *Estelle* established a two-prong standard requiring "deliberate indifference on the part of prison officials and it requires the prisoner's medical needs to be serious." *Id.* at 575. A medical need rises to the level of being serious if it has been "diagnosed by a physician as mandating treatment or one that is so obvious even a lay person would easily recognize the necessity for a doctor's attention." *Id.*

Medical claims by Andrew do not rise to a serious medical condition as she has no diagnosis from a physician. Further, her alleged back pain, weight gain, and psychological

harm are not so obvious that they are easily recognizable as needing a doctor's attention. Plaintiff admits that she has not sought any medical treatment for her back pain because she believed they would not do anything. [Doc. 1, p. 18]. Andrew also admits that she visited a physician assistant on February 06, 2025, who commented on her high blood pressure. [*Id.* at p. 19]. Andrew failed to provide any information as to why she did not seek medical attention for her backache, headaches, wrist pain, weight gain, blood pressure, or ankle scarring during this appointment, or as to why she did not exhaust her administrative remedies on these issues.

Andrew has not pled any facts indicating she is in substantial or excessive risk of serious harm, nor alleged any conditions that could be easily recognizable as needing immediate medical attention. "The 'inevitable byproduct' of anyone facing a long sentence . . . may include "depression, hopelessness, frustration, and other such psychological states." *Jackson v. Meachum,* 699 F.2d 578, 584 (1st Cir.1983). Andrew alleges no major physical or mental health illness but experiences only minor symptoms that could easily be classified as a byproduct of her sentence. Furthermore, even if a substantial risk existed as to future harm, Defendants have not disregarded that risk because medical and mental health treatment is available to her.

**PROPOSITION V: ANDREW HAS FAILED TO STATE A CLAIM FOR ANY FIRST AMENDMENT VIOLATION**

Andrew alleges her inability to attend mass and/or bible study is a violation of her exercise of freedom of religion under the First Amendment. [Doc. 1, p. 32]. The United States Supreme Court has held "that a prison inmate retains those First Amendment rights

that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier,* 417 U.S. 817, 822 (1974). The right to participate in congregate or communal services is not absolute. *Id.* To determine whether an alleged infringement has occurred, a reasonableness test is applied. *O'Lone v. Est. of Shabazz*, 482 U.S. 342, 349 (1987). In *Turner v. Safley*, the Supreme Court has laid out four factors in determining reasonableness. 482 U.S. 78, 90-91 (1987). The factors are:

> "[W]hether the challenged regulation or official action has a valid, rational connection to a legitimate governmental objective; whether prisoners have alternative means of exercising the burdened right; the impact on guards, inmates, and prison resources of accommodating the right; and the existence of alternative means of facilitating exercise of the right that have only a de minimis adverse effect on valid penological interests."

*See Salahuddin v. Goord,* 467 F.3d 263, 274 (2d Cir.2006).

First, an important function of correctional systems is deterrence of crime. *Pell v. Procunier*, 417 U.S. 817, 822 (1974). "[C]entral to all other corrections goals" is the "consideration of internal security within the corrections facilities themselves." *Id.* Second, "when other avenues remain available for the exercise of religion, "courts should be 'conscious of the measure of judicial deference owed to corrections officials in gauging the validity of the regulation.'" *Id.* at 827. Third, "when the accommodation of an asserted right will have a significant ripple effect on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials." *Turner v. Safley*, 482 U.S. 78, 90 (1987). (*quoting Jones v. N. Carolina Prisoners' Lab. Union, Inc.,* 433 U.S. 119, 132-133 (1977)). Finally, the lack of alternatives, or difficulties which make

it clear there are no easy alternatives, "is evidence of the reasonableness of a prison regulation." *Id.* at 91, 93.

Andrew has been given a death sentence, and Defendants are charged with housing her until that day comes. As stated, MBCC has no maximum security for women, and neither do any of ODOC's other facilities. As the only woman on death row, Andrew is in a unique situation which poses security concerns while she is housed in a minimum-security facility. For obvious reasons, there are no easy alternatives for Andrew's claims. Allowing for Andrew to have different restrictions from other death row inmates simply because of her situation would cause a ripple effect in the correctional system. Defendants have provided Andrew with reasonable accommodations for her to exercise her religion, namely weekly visits with a chaplain, access to religious books, and even allowing her to attend mass on Easter and Christmas. [Doc. 1, p. 4, p. 13-14]. Further, the restriction for an inmate housed in SMU is content-neutral and it advances the goals of MBCC of institutional safety and security. For those reasons, Andrew's claims for First Amendment violations of exercise of religion should be dismissed.

## PROPOSITION VI: ANDREW HAS FAILED TO STATE A CLAIM FOR FIRST AMENDMENT RETALIATION

Andrew alleges she was retaliated against when she was moved from general population back to SMU. [Doc. 1, p. 30]. To state a claim for First Amendment retaliation, a plaintiff must show (1) she was engaged in constitutionally protected activity, (2) the officials' actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the officials' adverse actions

were substantially motivated by plaintiff's activity. *Becker v. Kroll*, 494 F.3d 904, 925 (10th Cir. 2007). "Mere allegations of constitutional retaliation will not suffice; plaintiffs must rather allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Frazier v. Dubois*, 922 F.2d 560, 562 n.1 (10th Cir. 1990).

While Andrew can show she was engaged in a protected activity, she cannot show that she was chilled from continuing to engage in further activity, nor that her movement back to SMU (which aligned with her death sentence) was substantially motivated by her filing an appeal. Andrew's allegations are merely conclusory and offer no support as evidence other than her movement back to SMU coincided with a habeas corpus appeal. There are no further facts alleged to conclude Andrew faced retaliation for engaging in a protected activity. Andrew further assumes, without evidence, that Defendants were even aware of the court filing, which was made three days prior to her move. There are no facts in the Complaint indicating who Andrew spoke with about her court filing, when Andrew spoke with Defendants about the filing, what Defendants' response was, or how the determination amounted to a violation. Additionally, this present lawsuit filing came after her transfer back to SMU further negating her claim that she was chilled from continuing to engage in accessing the courts. Andrew has stated mere allegations, not specific facts, and has therefore failed to establish a claim for a constitutional retaliation violation.

## PROPOSITION VII: ANDREW HAS FAILED TO STATE A CLAIM UNDER RLUIPA.

RLUIPA prohibits a government from "impos[ing] a substantial burden on the religious exercise" of a prisoner "unless the government demonstrates that imposition of

the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling interest." *Alamiin v. Morton*, 528 F. App'x 838, 841 (10th Cir. 2013), citing 42 U.S.C. § 2000cc-1(a). A prisoner bringing a RLUIPA claim "must demonstrate he wishes to engage in (1) a religious exercise (2) motivated by a sincerely held belief, which exercise (3) is subject to a substantial burden imposed by the government." *Id.* (*citing Abdulhaseeb v. Calbone,* 600 F.3d 1301, 1312 (10th Cir. 2010)). Once the prisoner has satisfied this requirement, "the burden of proof shifts to the defendants to show the substantial burden results from a 'compelling governmental interest' and that the government has employed the 'least restrictive means' of accomplishing its interest." 600 F. 3d at 1318.

"The Supreme Court has left matters of security to the sound and principled discretion of prison administrators" until a general principle has been established. *Mann v. Reynolds*, 46 F.3d 1055, 1060 (10th Cir. 1995). "Where exercise of a right requires this kind of tradeoff, we think that the choice made by corrections officials—which is, after all, a judgment 'peculiarly within [their] province and professional expertise,' should not be lightly set aside by the courts." *Turner v. Safley*, 482 U.S. 78, 92-93 (1987) (citation omitted). Further, the Supreme Court has not extended RLUIPA claims to elevate accommodation of religious observances over an institution's need to maintain order and safety. *Cutter v. Wilkinson*, 544 U.S. 709, 722 (2005).

To satisfy the "least restrictive means" requirement of RLUIPA, courts have found the alternatives used by the Federal Bureau of Prisons (BOP) are particularly relevant to the analysis. *See Holt v. Hobbs*, 574 U.S. 352, 368-369 (2015); *Cutter v. Wilkinson*, 544

U.S. 709, 725-726 (2005). Under current BOP policy, inmates placed in segregation in the Special Housing Unit (SHU) at certain facilities are not permitted to attend communal church services with the general prison population, primarily due to extreme security concerns. 28 C.F.R. § 548.10(b). *See Chesser v. Dir. Fed. Bureau of Prisons*, No. 15-CV-01939-NYW, 2018 WL 3729511 (D. Colo. Aug. 6, 2018) (finding BOP established a compelling interest in maintaining institutional and national security when limiting group prayer). BOP provides inmates with reasonable "opportunities to pursue religious beliefs and practices" that are "consistent with the security and orderly running of the institution" 28 C.F.R. § 548.10(a). BOP considers multiple factors which make it necessary to restrict SHU inmates' participation in communal religious services. *Id*. These include the security risks involved with transporting inmates considered high security risk to and from group services which may compromise the institutional security and safety of staff and other prisoners, and that due to the extreme security classification of SHU inmates, communal or congregate services may be seen as an unacceptable risk. *Id.* at § 541.23(c); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 352-353 (1987). There are, however, alternative religious accommodations set forth for SHU inmates in BOP which include visits from a chaplain, access to religious books and literature, allowance for communion or Sabbath prayer items, and last rites. Federal Bureau of Prisons Program Statement, § 5360.10. By allowing for alternative methods of worship, BOP balances First Amendment right accommodations with the security concerns involved with inmates held in high security units.

When an inmate is prevented from attending communal services for purposes relating to legitimate penological objectives, their claim is without merit. *See Matiyn v.*

*Henderson*, 841 F.2d 31, 37 (2d Cir. 1988) (prison officials did not violate first amendment right to freedom of religion when he was prevented from attending communal services for penological reasons); *O'Lone v Estate of Shabazz*, 482 U.S. 342, 350-351 (1987) (prison officials did not violate first amendment when inmate was assigned work detail that preventing him from attending weekly congregational service). When an inmate's request for religious accommodations "imposes an unjustified burden on other institutionalized persons" or "jeopardizes the effective functioning of an institution," the facility should be free to resist. *Cutter v. Wilkinson,* 544 U.S. 709, 726 (2005).

Andrew seeks a declaration that the ODOC policies denying her access to weekly bible study and mass violate RLUIPA. Inmates who are sentenced to death are not required by ODOC to be given an initial custody assessment scale. ODOC Policy OP-060102A. While an explanation for forgoing an assessment is not included in the policy, the assessment scale clearly states an inmate sentenced to death triggers a mandatory override requiring a level of nothing lower than medium custody.[4] Additionally, ODOC maintains a clear policy for the security standards when inmates are transported. ODOC Policy OP-040111. When moving either maximum or medium level inmates, the inmate must be placed in handcuffs, belly chains, leg irons, a handcuff cover and be escorted by at least two armed prison officials. *Id.* This level of security highlights the safety risk associated with the level of offender, as well as outlining the hardships placed on prison staff who must prepare and accompany the inmate. As Andrew pointed out, even when seeking

---

[4]  ODOC Female Initial Custody Assessment scale found at http://oklahoma.gov/content/dam/ok/en/doc/documents/policy/section-06/060102af.pdf

medical care ODOC policy prohibits any other inmates from being in the medical unit when an inmate from SMU is being seen. [*Id.* at p. 17]. As such, ODOC has a compelling interest in limiting a death row inmate's access to certain services as transporting high security inmates compromises the institutional security and safety of staff and other prisoners.

Transporting Andrew, whose security level is no lower than medium due to her death sentence, an undetermined number of times throughout any given week to attend group religious services would place an unjustified burden on other inmates and staff, as it would monopolize the time of two armed prison officials, compromising safety and jeopardizing MBCC's functioning ability. Andrew also correctly points out she is the sole woman on death row in the state of Oklahoma. [Doc. 1, p. 6]. As such, there are also no alternatives to house her in another facility which may be able to accommodate her requests. Andrew has, however, admittedly been given religious accommodation by being allowed visits from her chaplain, access to books and literature, and attending mass on two occasions. [*Id.* at p. 8].

MBCC, a minimum-security facility, has a legitimate penological interest in the safety and security of staff and other inmates while being in the unique situation of housing a death row inmate and employs the least restrictive methods by allowing Andrew religious accommodations to exercise her faith. As such, Andrew has failed to state a claim under RLUIPA.

**PROPOSITION VIII: ANDREW IS NOT ENTITLED TO INJUNCTIVE RELIEF.**

For reasons set forth above, Andrew has failed to state a claim for a constitutional violation against Defendants. Since there is no ongoing constitutional violation, Andrew's request for injunctive relief must accordingly be denied. *Green v. Mansour*, 474 U.S. 64 (1985).

## CONCLUSION

For the reasons stated above, Defendants respectfully request this Court grant their Motion to Dismiss and for any other relief deemed just and proper by the Court.

Respectfully submitted,

*s/ Lexie Norwood*
**LEXIE P. NORWOOD, OBA# 31414**
Assistant Attorneys General
OKLAHOMA ATTORNEY GENERAL'S OFFICE
313 NE 21st Street
Oklahoma City, OK 73105
T: (405) 521-3921
F: (405) 521-4518
lexie.norwood@oag.ok.gov
*Attorney for Defendants*

25

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of September, 2025, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing. I further certify that a true and correct copy of the foregoing document was sent to all counsel of record who are registered ECF participants.

*s/ Lexie Norwood*
**Lexie Norwood**