IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

BRENDA EVERS ANDREW,          )
                              )
        Plaintiff,            )
                              )
v.                            )          Case No. CIV-25-928-D
                              )
SCOTT TINSLEY, et al.,        )
                              )
        Defendants.           )

**ORDER**

Plaintiff, an Oklahoma inmate, brought this civil rights action under 42 U.S.C. § 1983, alleging violations of her constitutional rights while housed at the Mabel Bassett Correctional Center (MBCC). [Doc. No. 1]. Defendants filed a Motion to Dismiss [Doc. No. 11], to which Plaintiff responded [Doc. No. 23]. The matter was referred to United States Magistrate Judge Suzanne Mitchell for initial proceedings in accordance with 28 U.S.C. § 636(b)(1)(B) and (C) [Doc. No. 3].

Before the Court is Judge Mitchell's Report and Recommendation [Doc. No. 24], in which she recommends that Defendants' motion to dismiss be granted in part and denied in part. As stated therein, Judge Mitchell recommends that the Court dismiss Plaintiff's Eighth Amendment conditions of confinement claim and deny Defendants' motion to dismiss as to the remaining claims.

In her report, the magistrate judge notified the parties of their right to file an objection to the report on or before February 11, 2026, and that the failure to object waives

1

the right to appellate review of both factual and legal issues contained in the report. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

Only Plaintiff filed an Objection [Doc. No. 25], arguing that Judge Mitchell erred in recommending the dismissal of Plaintiff's conditions of confinement claim under the Eighth Amendment.

In her Complaint [Doc. No. 1], Plaintiff provides that she is currently serving a death sentence after being convicted of first-degree murder for the shooting death of her estranged husband, for which she maintains her innocence. *Id.* at ¶ 1. Plaintiff alleges that in January 2024, she was moved to the Special Management Unit (SMU) and "is forced to remain in her cell for at least 23 hours each day with no human interaction." *Id.* at ¶ 5. Her cell is 9 feet by 11 feet with a shower, sink, and toilet. *Id.* at ¶ 41.

"For the one hour each day that she is allowed out of her cell and into the 'yard'—which is just a small room with concrete floors and concrete walls and no ceiling—she is still in isolation and restrained." *Id.* Further, Plaintiff alleges that visits with her priest are "through a narrow tray pass in her door," and the "noise and disruption of the SMU prevents [Plaintiff] from being able to fully engage in worship or have a meaningful religious experience during these visits." *Id.* at ¶¶ 16, 17. Plaintiff also provides that she "cannot have conversations with other incarcerated people or interact with anyone other than prison officers." *Id.* at ¶ 43. In her room, "[Plaintiff] has no exposure to sunlight as she has neither an external window nor a skylight." *Id.* at ¶ 44. Plaintiff further alleges that her unit smells, she is not given access to cleaning supplies more than once per week, her sleep is disrupted by other residents yelling in the SMU, she is not given access to any prison programming

or exercise equipment, and her visitation times with friends and family can be moved arbitrarily. *Id.* at ¶¶ 46-47, 49, 51, 54-55. When she does have visitors, she remains restrained. *Id*. at ¶ 57. Finally, Plaintiff alleges that she is strip searched more often during her time in the SMU. *Id.* at ¶ 59.

Plaintiff alleges that the severe isolation has harmed her in that "her overall physical health substantially declined, including that she now suffers from back pain, high blood pressure, weight gain from lack of meaningful access to exercise, and other significant medical concerns." *Id.* at ¶ 12. Her conditions of confinement "cause her stress, anxiety, headaches, insomnia, lethargy, depression, and paranoia." *Id.* at ¶ 61. She also alleges that she is "unable to receive prompt medical care" due to a policy prohibiting other inmates from being in the medical unit when a person from the SMU is there. *Id.* at ¶ 62. When other inmates in the SMU are pepper-sprayed, the "gas makes her eyes steam, and she coughs for 30 to 40 minutes each time[.]" *Id.* at ¶ 63. She further contends that she has developed back problems due to her confinement in the SMU since she cannot fully sit up in her bed and the one metal stool is uncomfortable to sit on. *Id.* at ¶ 64. She also alleges that her headaches have worsened since moving into the SMU, that she is "suffering from tooth pain and has not been able to access dental care despite repeated requests," that her blood pressure is increasing, and that she has gained weight while in the SMU. *Id.* at ¶¶ 66-69. Plaintiff's restraints leave marks on her wrists and ankles. *Id.* at ¶¶ 71-73. Finally, Plaintiff alleges that the isolation of the SMU has harmed her mental health. *Id.* at ¶ 74.

In her report and recommendation [Doc. No. 24], Judge Mitchell agreed with Defendants that Plaintiff had "not pled any facts indicating she is in substantial or excessive

risk of serious harm, nor alleged any conditions that could be easily recognizable as needing immediate medical attention." *Id.* at 18. Judge Mitchell notes that "[a]n inmate making an Eighth Amendment claim for constitutionally inadequate conditions of confinement must allege and prove an objective component and subjective component associated with the deficiency[,]" and the "deprivation alleged must be objectively 'sufficiently serious,' depriving the inmate of 'the minimal civilized measure of life's necessities.'" *Shannon v. Graves*, 257 F.3d 1164, 1168 (10th Cir. 2001); *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).

In concluding that Plaintiff's alleged deprivations are not "sufficiently serious" for purposes of her Eighth Amendment claim, Judge Mitchell explains:

> Plaintiff acknowledges that she can regularly have visits with family members, even if only within the confines of an inconsistent visitation time schedule. Doc. 1, at 14-15. She is also able to visit her priest. *Id.* at 4. Plaintiff 'maintains a degree of social contact and environmental stimuli' in solitary confinement, which 'does not violate [her] Eighth Amendment right to be free from cruel and unusual punishment.' *Silverstein v. Fed. Bureau of Prisons*, 559 F. App'x 739, 756 (10th Cir. 2014). And solitary confinement for 'twenty-three hours a day for five days a week and twenty-four hours the remaining two days' does not in itself constitute cruel and unusual punishment where the inmate's '"minimal physical requirements—food, shelter, clothing and warmth" [are] met.' *Hill v. Pugh*, 75 F. App'x 715, 721 (10th Cir. 2003); *see, e.g., Grissom v. Roberts*, 902 F.3d 1162, 1174-75 (10th Cir. 2018) (holding that prison officials were entitled to qualified immunity where prisoner in solitary confinement had regular communication 'with other inmates and staff and [was] afforded regular exercise (including outdoor recreation) and regular access to reading materials and to medical and mental health care).

[Doc. No. 24, at 19-20]. For the foregoing reasons, Judge Mitchell recommends dismissal of Plaintiff's conditions of confinement claim because "Plaintiff has alleged no deprivations of food, shelter, clothing, or warmth." *Id.* at 20.

In her Objection [Doc. No. 25], Plaintiff first asserts that she is suffering serious bodily harm as a result of her current conditions of confinement. "The Eighth Amendment's prohibition of cruel and unusual punishment imposes a duty on prison officials to provide humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from serious bodily harm." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008).

Plaintiff suggests that courts have recognized "far less severe conditions as sufficiently cognizable under the Eighth Amendment." [Doc. No. 25, at 6]. However, the Court finds that the cases cited by Plaintiff involved more serious pain and conditions than those alleged by Plaintiff in this case. In *Sealock v. Colorado*, 218 F.3d 1205 (10th Cir. 2000), the evidence showed that the inmate whose medical care had been delayed "was very pale, sweating and had been vomiting," and that the inmate told prison officials that he "was or might be having a heart attack." *Sealock*, 218 F.3d at 1210. The prison official refused to transport the inmate immediately to a doctor or hospital "because it was snowing outside and it would take time to warm up the prison van for transportation." *Id.* There was also evidence that the prison official told the inmate "not to die on his shift" because "[i]t's too much paperwork." *Id.* at 1208, 1210. The Court reads *Sealock* to involve more than Plaintiff's description of "chest pain."

Plaintiff also cites to *McCowan v. Morales*, 945 F.3d 1276 (10th Cir. 2019). In that case, the arrestee had "searing shoulder pain" and had notified the arresting officer that he had a "prior shoulder injury that was sufficiently serious to be the subject of a social security disability claim." *McCowan*, 945 F.3d at 1293. Due to his shoulder injury and severe pain, the arrestee requested that officers handcuff him in the front, which request was denied. *Id.* at 1280. The arrestee claims that he "continued to cry and scream in pain, and begged the officers present … to loosen his handcuffs," and the officers "laughed at his request." *Id.* The arrestee was later "pulled off the floor, causing his shoulders to audibly tear." *Id.* at 1281. The arrestee "screamed in pain but no medical treatment was offered or provided." *Id.* Rather, the arrestee was taken to the detention center "where he was medically cleared and booked despite telling the booking officer he was in 'excruciating pain.'" *Id.* "Following his arrest, McCowan had two shoulder surgeries and accumulated nearly $120,000 in medical bills." *Id.* Apart from citing to *Sealock* and *McCowan*, Plaintiff does not explain how her medical conditions are as serious or more serious than the pain and medical conditions in the cited cases.

Plaintiff also contends that Judge Mitchell erred in concluding that Plaintiff's alleged "severe social and environmental isolation" is insufficient to state an Eighth Amendment claim, especially considering the alleged lack of penological justification for Plaintiff's isolation. But, as noted by the magistrate judge, Plaintiff has not shown that the alleged deprivation of social stimuli is sufficiently serious to constitute an Eighth Amendment violation. And "Plaintiff bears the burden of showing, first, that [her] conditions of confinement are, objectively, sufficiently serious, and second, that the Federal

Officers were deliberately indifferent to [her] safety." *Ajaj v. United States*, 293 F. App'x

575, 582 (10th Cir. 2008). In *Silverstein*, the Tenth Circuit provided:

> This circuit has not definitively determined whether a lack of social contact and environmental stimulation rises to an Eighth Amendment violation. However, even if we determined it did, we cannot say [the inmate's] living conditions, including the amount of social contact and environmental stimuli Mr. Silverstein receives, are sufficiently serious so as to 'deprive [him] of the minimal civilized measure of life's necessities.'

559 F. App'x 739, 755-56 (10th Cir. 2014); *see also Hill v. Pugh*, 75 F. App'x 715, 721

(10th Cir. 2003) ("We cannot conclude that Mr. Hill's Eighth Amendment allegations state

a claim upon which relief may be granted. He contends that ADX conditions are cruel and

unusual in that he is isolated in his cell twenty-three hours a day for five days a week and

twenty-four hours the remaining two days. … He admits, however, that 'his minimal

physical requirements—food, shelter, clothing and warmth' have been met."). Upon review

of the Report and Recommendation, the Court agrees with Judge Mitchell's conclusion that

Plaintiff has not plausibly alleged an Eighth Amendment violation by failing to allege

sufficiently serious conditions of confinement.[1]

---

[1] Plaintiff also objects to the dismissal of her conditions of confinement claim as premature because "an inquiry into conditions of confinement by necessity relies on the particular facts of each situation." *See DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001). The Court acknowledges that conditions of confinement claims may be fact-intensive. However, Plaintiff nevertheless has the burden to state a claim upon which relief can be granted, and Plaintiff has provided no authority for the proposition that a conditions of confinement claim cannot be analyzed under Rule 12(b)(6). *See Hill*, 75 F. App'x at 721 (finding that the plaintiff had not alleged conditions that were cruel and unusual and thus had not stated a claim upon which relief may be granted).

**CONCLUSION**

For these reasons, the Court **ADOPTS** the Report and Recommendation [Doc. No. 24] in its entirety, and Defendants' Motion to Dismiss [Doc. No. 11] is **GRANTED in part** and **DENIED in part**. Plaintiff's Eighth Amendment conditions of confinement claim is **DISMISSED**. Plaintiff's remaining claims survive dismissal.

**IT IS SO ORDERED** this 12th day of June, 2026.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE